# IN THE SUPREME COURT OF IOWA

No. 03 / 04-2073

Filed March 16, 2007

**CHRISTOPHER ALES**,

Appellant,

vs.

**ANDERSON, GABELMANN, LOWER & WHITLOW, P.C., f/k/a ANDERSON, GABELMANN, ALES, P.C.**,

Appellee.

---

Appeal from the Iowa District Court for Scott County, Bobbi M. Alpers, Judge.

An unsuccessful party to an arbitration proceeding appeals a district court decision confirming in part and vacating in part the arbitration award. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

Michael R. Blaser and Rebecca A. Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, and Richard A. Davidson of Lane & Waterman, LLP, Davenport, for appellant.

Louis R. Hockenberg and Lawrence P. McLellan of Sullivan & Ward, P.C., West Des Moines, for appellee.

**WIGGINS, Justice.**

An unsuccessful party to an arbitration proceeding that involved a covenant not to compete appeals a district court decision confirming in part and vacating in part the arbitration award. The district court confirmed the award finding a breach of the covenant not to compete occurred. It also confirmed the damages the arbitrator assessed for the breach. The district court vacated the arbitrator's attorney's fees and costs determination and remanded the case back to the arbitrator to determine an attorney's fees and costs award consistent with its decision. Because we agree substantial evidence supports the arbitrator's determination that the covenant not to compete was breached and the damages he awarded for that breach, we affirm that part of the district court's decision. However, because we find substantial evidence only supported part of the arbitrator's award regarding the attorney's fees and costs, we reverse the judgment of the district court, vacate the portion of the arbitration award regarding the fees and costs not supported by substantial evidence, and confirm the portion of the award regarding the fees and costs supported by substantial evidence. We also remand the matter to the district court to determine an appropriate award for the fees and costs incurred by the prevailing party in the district court and on this appeal.

## I. Background Facts and Proceedings.

Christopher Ales is a certified public accountant. After working for over ten years in the tax department of two corporations, Ales opened his own accounting practice. In December 1998 Ales merged his solo-practice with Anderson, Gablemann, P.C. Anderson, Gabelmann, P.C., now known as Anderson, Gabelmann, Lower, Whitlow, P.C. (AGLW), is a public accounting firm located in Bettendorf, Iowa. AGLW agreed to purchase Ales'

customer list for a one-third interest in the firm and a $205,000 promissory note (the "Old Note").

Before coming to AGLW, Ales began working on residential building projects for low-income residents, commonly referred to as section 42 projects. Ales continued to work on section 42 projects while employed by AGLW. By May 2000 friction had built between Ales and his partners. Ales described this as "the beginning of the end," and discussions began regarding Ales leaving AGLW. By December 1 Ales and AGLW entered into an agreement that provided the terms of Ales' separation from AGLW.

Under the agreement, AGLW purchased Ales' 1000 shares of stock in the firm, his revalued client list, the Old Note, and Ales' covenant not to compete. Ales received $345,000 in consideration for these assets in the form of a promissory note (the "New Note"). Ales also agreed "upon reasonable request" to "use commercially reasonable efforts to assist [AGLW] in retaining the clients on the Client List for the mutual benefit of all parties to this Agreement."

The covenant not to compete stated for a five-year period Ales promises, within a fifty-mile radius from any office of AGLW established as of December 1, 2000, not to

> (a) provide like or similar services to those provided by [AGLW] directly or indirectly, to any of [AGLW]'s clients (past or present) or (b) either alone or in association with others, directly or indirectly, organize, own, control, lend financial support to, manage, operate, join, or become associated with, represent, advise, render services to, or become employed by or participate in any entity providing like or similar services to those provided by [AGLW].

Exempt from the covenant not to compete were (1) any activities carried out by Ales, directly or indirectly, in association with his section 42 projects; (2) services provided by Ales to Watts Trucking Service, Inc. and its related

entities and individuals; and (3) services provided by Ales to any company in which Ales held a fifty percent or more interest.

The agreement also gave AGLW the right to offset against the New Note "an amount equal to the last two year's fees collected by [AGLW] from the client with whom Ales is alleged to have violated the covenant not to compete." The agreement further provided if a dispute regarding the agreement arose, the parties would submit the dispute to binding arbitration under chapter 679A of the Iowa Code. Finally, the agreement provided the prevailing party in any arbitration proceeding would be entitled to reimbursement from the non-prevailing party of the actual attorney's fees and costs involved in pursuing or defending the claim.

After the agreement was signed, Ales remained in the AGLW offices under a new leasing agreement. In February 2001 Ales moved his operations to his home. Eventually by April or May Ales moved his office to Renwick House, a historic home converted into office space. Renwick House is located within fifty miles of AGLW's offices. Ales continued to work as a developer of section 42 projects through his various companies.

Diane Artioli, a certified public accountant, previously worked as a part-time accountant for AGLW from 1998 to 2001. After leaving AGLW, Artioli began working for another company, but by January 2002 Artioli had opened her own practice. She first rented office space in Davenport. After Artioli opened her office, a number of AGLW clients started requesting her services. At this time, Artioli also started doing work for Ales and his companies. In June 2002 Artioli closed her Davenport office and began to work at Renwick House.

On September 17 AGLW notified Ales that it had "determined that [Ales was] in violation of the Covenant Not To Compete . . . by providing like or similar services as those provide by [AGLW], directly or indirectly, to

certain of [AGLW]'s clients." AGLW indicated the basis for its finding was that: (1) as of March 8, 2002, clients Erickson Truck/Jack Erickson Companies, KCM Construction/Kyle Meier Companies, D & D Chevrolet/Kilberg Companies, Gary Clapp, Richard Yerington, Dr. Margaret Millar, Ed Mowen, Richard Henson, and Roy Harper notified AGLW that Artioli would be providing their professional accounting, tax, and consulting services; (2) Ales continued to hold himself out as a practicing certified public accountant and indirectly started accounting operations by hiring Artioli and another employee to provide accounting or similar services from Ales' offices; and (3) Ales worked directly and/or indirectly and/or in association with Artioli by providing, directly or indirectly, organization, control, financial support, cost-sharing arrangements, management, operating assistance, association, representation, and advisement, as evidenced by Artioli working out of and utilizing staff within Ales' office building; and this evidenced that Ales was participating with Artioli to provide like or similar services to those provided by AGLW. Due to these allegations, AGLW offset the New Note by $154,305, representing the last two years of fees collected by AGLW from the these clients.

AGLW sent an additional notice to Ales on July 1, 2003. In this notice, AGLW alleged Ales had violated the covenant not to compete by providing services to the Premier Properties group of corporations and Dr. Alan Kendall. Due to this allegation, AGLW offset the New Note by an additional $46,148, the amount representing the last two years of fees collected from the Premier Properties group. Ales contested both notices. Pursuant to the agreement an arbitration hearing was set.

Ales also filed a claim in district court requesting the acceleration of the New Note. Ales alleged AGLW had improperly effectuated an offset of $154,160 without notice at the time the offset was done. Ales also alleged

AGLW untimely attempted to cure its default by revising Ales' 1099 tax form for 2002 and reverting to the original amortization schedule. AGLW filed a motion to stay or in the alternative a motion to dismiss Ales' claim. The district court found Ales' claim was not severable from the matters subject to the arbitration and stayed the district court action pending the completion of the arbitration.

The case proceeded to arbitration. At arbitration, the parties stipulated AGLW held the burden of proof as to whether Ales violated the covenant not to compete. The arbitrator considered the evidence and issued a final decision and award on the merits and an interim decision on fees and expenses. In this decision, the arbitrator found: (1) Artioli was a certified public accountant offering accounting services from an office at Renwick House; (2) these accounting services provided by Artioli were like or similar to those provided by AGLW; (3) Artioli's services were offered within fifty miles from the AGLW office and at a time within five years following the withdrawal of Ales from AGLW; (4) Ales controlled, financially supported, and was associated with Artioli's accounting practice and this was a violation of the covenant not to compete; (5) AGLW's interpretation of the damage award is more persuasive and consistent with the clear intent of the parties; therefore, AGLW's interpretation is commercially reasonable and closer to the ordinary and customary construction of the words in question; (6) damages relating to AGLW's claims in its September 17, 2002, letter amounted to $149,570 (less $3920 for the unpaid portion of the Erickson invoices) and that this amount should be subtracted from the New Note as of September 17, 2002; (7) damages relating to AGLW's claims in its July 1, 2003, letter amounted to $49,480.10 and should be subtracted from the New Note as of July 1, 2003; and (8) the lawsuit filed by Ales (and stayed by the district court) is a violation of the arbitration clause in the

agreement and AGLW's actions in issuing a 1099 tax form and revised amortization schedule did not constitute a default. The arbitrator awarded AGLW an offset to the New Note of $145,650 as of September 17, 2002, and another $49,480.10 as of July 1, 2003.

The arbitrator also decided AGLW was entitled to reimbursement of its reasonable and necessary attorney's fees and costs incurred in the arbitration and in defending against Ales' district court action to accelerate payment of the New Note. However, at the time of this decision, the arbitrator did not have all of the attorney's fees and costs claimed by AGLW before him. Instead, the arbitrator left AGLW's attorney's fees and costs award unsettled. The arbitrator instructed the parties to confer and attempt to negotiate and settle the amount of AGLW's award for attorney's fees and costs. However, the arbitrator stated he would conduct a further hearing on fees and costs if requested by either party.

At AGLW's request, the arbitrator held a hearing to determine the final award on attorney's fees and costs. The arbitrator adjusted AGLW's claimed fees and costs of over $115,000 to $83,485.08 on the grounds that some of the claimed fees and costs were incurred prior to the arbitration, some were unrelated to the arbitration, some were excessive, and some were duplicative.

After making these adjustments to the attorney's fees and costs claimed by AGLW, the arbitrator found there would be a fair allocation of responsibility if Ales paid his own legal fees and costs of $73,312.52 and fifty percent of AGLW's adjusted claim, $41,742.54. The arbitrator reasoned under the circumstances of this case, having Ales pay $115,055.06 in fees and costs is commercially reasonable and consistent with the "reasonable and necessary" standard of his interim decision. The

arbitrator allowed AGLW to offset the New Note by $41,742.54, fifty percent of AGLW's attorney's fees and costs, as of the date of the decision.

Ales applied to the district court for a vacation of the arbitration award arguing the arbitrator exceeded his power and authority and/or substantial evidence did not support the arbitrator's findings. AGLW answered Ales' application and requested an order confirming the arbitration award and entering judgment on the award in favor of AGLW. AGLW also requested an award of attorney's fees and costs for defending Ales' appeal. Further, AGLW applied for vacation of the final award of fees and costs claiming the arbitrator's award of fifty percent of its attorney's fees violated the agreement.

The district court considered both applications for vacation of the arbitration award. First, the district court found substantial evidence supported the arbitrator's findings that Ales violated the covenant not to compete and the damages awarded for that breach. Next, the district court affirmed the authorization of the offsets to the New Note for the damages incurred by AGLW for Ales' breach of the covenant not to compete. In doing so, the district court found the arbitrator did not exceed his authority by creating the offsets because "[t]he covenant not to compete specified the use of an offset if a violation of the covenant not to compete is determined and allow[ed] for reimbursement of attorney's fees and expenses incurred in the resolution of a dispute." Finally, the district court found, based on the specific terms used by the parties in the agreement, the arbitrator exceeded his authority when he reduced AGLW's attorney's fees and costs award by finding the arbitrator had no authority to adjust the attorney's fees and costs. The district court confirmed the arbitrator's findings relating to the breach and the damage award for that breach, vacated the arbitrator's

award on attorney's fees and costs, and remanded the case back to the arbitrator as required by Iowa Code section 679A.12.

Ales appeals.

## II. Issues.

A party may appeal a district court order regarding an arbitration award, when the order confirms or denies confirmation of an arbitration award or when the order modifies or corrects an award. Iowa Code § 679A.17(1)(*c*), (*d*) (2003). On appeal Ales argues: (1) the arbitrator's decision that Ales violated the covenant not to compete is not supported by substantial evidence; (2) the entry of damages with respect to the Premier Properties group of corporations and Dr. Kendall is not supported by substantial evidence; and (3) the district court erred in granting AGLW's application for partial vacation of the award for attorney's fees and costs.

## III. Scope of Review.

The Code provides that we review the appeal of an arbitration award "in the manner and to the same extent as from orders or judgments in a civil action." Iowa Code § 679A.17(2). Accordingly, our review is for correction of errors at law because this is an appeal from a court order in a civil law suit. *$99 Down Payment, Inc. v. Garard*, 592 N.W.2d 691, 693 (Iowa 1999); *see also Wesley Retirement Servs. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999); Iowa R. App. P. 6.4. However, our review is limited. *See Humphreys v. Joe Johnson Law Firm, P.C.*, 491 N.W.2d 513, 515 (Iowa 1992) (finding the judicial review of arbitration awards is very limited). Our function is not to determine whether the arbitrator has correctly resolved the grievance. *Postville Cmty. Sch. Dist. v. Billmeyer*, 548 N.W.2d 558, 562 (Iowa 1996). "To allow courts to 'second guess' an arbitrator by granting a broad scope of judicial review would nullify the very advantages of arbitration." *$99 Down Payment, Inc.*, 592 N.W.2d at 694. A

court cannot vacate or refuse to confirm the award even if the court could not or would not grant the same relief. Iowa Code § 679A.12(2). As long as an arbitrator's award does not violate one of the provisions of section 679A.12(1), we will not correct errors of fact or law. *Humphreys*, 491 N.W.2d at 515.

### IV. Analysis.

*A. Substantial Evidence.* The first two issues argued by Ales on appeal concern whether substantial evidence supports the arbitrator's decision. With exceptions not applicable here, chapter 679A allows the district court to vacate an arbitration award when substantial evidence on the record as a whole does not support the award.[1] Iowa Code § 679A.12(1)(*f*). "Generally, evidence is substantial if a reasonable person would accept the evidence as sufficient to reach a conclusion." *Humphreys,* 491 N.W.2d at 516 (citation omitted). This court does not consider evidence to be insubstantial merely because different conclusions can be drawn from the evidence. *State v. Dohlman,* 725 N.W.2d 428, 430 (Iowa 2006). "[T]he ultimate question is whether the evidence supports the finding actually made, not whether the evidence would support a different finding." *Id.* (citations omitted). Our review of the record reveals substantial evidence supports the arbitrator's decision that Ales violated the covenant not to compete and that the arbitrator properly calculated AGLW's damages attributable to the Premier Properties group of corporations and Dr. Kendall.

Although there was conflicting testimony as to the extent of control Ales had over Artioli's accounting practice, there was ample evidence in the

---

[1]The district court cannot vacate an arbitration award for lack of substantial evidence if the party urging the vacation of an arbitration award did not cause the proceedings to be recorded or if the arbitration was conducted under the auspices of the American Arbitration Association. Iowa Code § 679A.12(1)(*f*) (2003).

record to support the arbitrator's decision that: (1) Ales controlled, financially supported, and associated with Artioli's accounting practice; (2) Artioli was providing services prohibited by the covenant not to compete; and (3) this conduct was a violation of the covenant not to compete.

The evidence supports the arbitrator's finding that Ales controlled and associated with Artioli. Artioli held herself out as vice president of Signature Construction Company, one of Ales' companies, as Ales' vice president of finance, and as Ales' chief financial officer. Artioli was involved in the day-to-day management of some of Ales' companies. She testified she "provide[d] assistance to the accounting staff," and generally oversaw Ales' staff. Artioli described her duties to Ales as an "expansive list" and that she "[did not] know that [she] could list everything that [she] do[es]" for Ales' companies. Artioli assisted in the hiring of staff and participated in the interview process for Ales' office managers and a compliance regional manager. When one of Ales' companies contested paying unemployment compensation for a former employee, Artioli represented the company at the appellate hearing. She also handled banking matters and held signature authority for Ales and his companies. Her authority encompassed the ability to negotiate or discuss some contracts for Ales and his companies. When applying for funding from the Iowa finance authority, Ales included Artioli as one of his staff. Ales testified Artioli works at his behest and that he had the right to define the role she would play on his behalf. Importantly, sixty-four percent of Artioli's gross revenues came from Ales and his companies.

Additionally, Ales and Artioli shared a filing system at Renwick House. Both Artioli and Ales had access to each other's files. There was no separation between Ales' files and Artioli's files, or between old files

transferred from AGLW and new files created by Ales or Artioli at Renwick House.

The record also shows that by February 2002 Artioli was doing public accounting work for almost all of AGLW's former clients that AGLW claimed Ales was servicing and that Ales was servicing these clients through his control and association with Artioli. Artioli did not advertise her business. Her company was not listed in the yellow pages. Instead, Artioli testified she relied on networking and word-of-mouth to promote her business. Although Artioli claims she was not told how these former-AGLW clients happened to walk through her door when they became her clients, she stated she later became aware Ales referred these former-AGLW clients to her. Factually, Ales referred numerous AGLW clients to Artioli. Ales testified he believed because he had known these clients for years, his referral lent some weight to these clients' decisions to leave AGLW and go to Artioli.

Finally, the evidence demonstrates Ales lent considerable financial support to Artioli. Artioli's office was located in Renwick House, which Ales owns. Ales and Artioli had an oral lease agreement and Artioli paid $1200 per month in rent. Included in the lease price was the use of Renwick House's telephone service, fax machine, copier, internet service, and general office supplies. Additionally, Artioli was able to utilize the services of Ales' employees at a rate of $40 per hour. However, from the time Artioli opened her office at Renwick House until the time of the arbitration hearing, a period of fifteen months, Artioli only paid Ales $4500 for these services. Ales also hired certain employees with Artioli's needs in mind.

As to the evidence supporting the damages the arbitrator awarded for the Premier Properties group of corporations and Dr. Kendall, the record shows Artioli provided accounting services for Eagle Properties, Cheyenne

Properties, Breckenridge Properties, and Quality Properties. Golden Properties and LeAnn Equities also paid Artioli. Ales concedes Dr. Kendall owns all of these entities, including Premier Properties. Bill Gabelmann, a partner with AGLW, described Premier Properties as "a group of approximately eight corporations with different properties associated with each one." These eight corporations include Breckenridge Properties, Quality Properties, Cheyenne Properties, Eagle Properties, Golden Properties, and LeAnn Equities. Breckenridge Properties, Quality Properties, Cheyenne Properties, Eagle Properties, and Premier Properties all registered with the Iowa secretary of state and listed the home office as 1318 4th Avenue, Moline, Illinois. Further, when Artioli billed Breckenridge Properties, Quality Properties, Cheyenne Properties, and Eagle Properties she always billed the same person—Mark Nelson, who worked for Premier Properties. The record supports that Premier Properties was the umbrella name for a group of entities all run by Dr. Kendall, all in the business or related-business of property management.

The agreement provided damages for a breach of the covenant not to compete in "an amount equal to the last two (2) year's fees collected by [AGLW] from the client with whom Ales is alleged to have violated the Covenant Not to Compete." The arbitrator allowed damages to be calculated using fees generated by AGLW from 1997 to 1999, the last two years AGLW collected fees from the Premier Properties group of corporations and Dr. Kendall. Ales argues, "[t]his sentence clearly refers to the last two calendar years' fees, not fees that were billed and collected four to six years before the violation allegedly occurred."

On our limited review, "every reasonable presumption will be indulged in favor of the legality of an arbitration award." *Humphreys*, 491 N.W.2d at 514; *see also* Iowa Code § 679A.12(2) (stating "[t]he fact that the relief

awarded could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award"). Further, when an arbitrator interprets an agreement, the arbitrator is able to draw from the "essence of the agreement" and " 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority' even a court's conviction that the arbitrator committed error does not suffice to overturn the decision." *Domke on Commercial Arbitration,* § 39:12, at 24 (3d ed. 2005) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371, 98 L. Ed. 2d 286, 299 (1987)).

Under this standard, the arbitrator's interpretation of the language in the covenant not to compete allowed him to calculate the damages using fees generated by AGLW from 1997 to 1999, the last two years AGLW collected fees from the Premier Properties group of corporations and Dr. Kendall rather than from the last two calendar years of fees. Accordingly, we find substantial evidence supports the arbitrator's decision that Ales violated the covenant not to compete and the entry of damages with respect to the Premier Properties group of corporations and Dr. Kendall.

*B. Attorney's Fees and Costs.* The agreement between the parties stated, "the prevailing party shall be entitled to reimbursement from the non-prevailing party of the actual attorneys' fees and costs incurred" in pursuing or defending a claim or dispute brought to arbitration or to a court of competent jurisdiction under the agreement.

The arbitrator reduced AGLW's claim for attorney's fees and costs twice. The arbitrator made the first reduction because some of the claimed fees and costs were incurred prior to the arbitration, some were unrelated to the arbitration, some were excessive, and some were duplicative. The

arbitrator made the second reduction in order to balance the attorney's fees and costs each party had to pay.

The district court found the arbitrator should not have made either reduction stating "[t]he arbitrator's use of 'reasonable and necessary' legal fees and expenses and the application of a reasonableness standard are not supported by substantial evidence and do exceed the arbitrator's power and authority based upon the specific terms" of the parties' agreement.  The district court then vacated the attorney's fees and costs award and remanded the dispute back to the arbitrator to determine the attorney's fees and costs in accordance with the court's ruling.

A party's disagreement with the arbitrator's conclusion is not grounds for vacating the award.  *Iowa City Cmty. Sch. Dist. v. Iowa City Educ. Ass'n*, 343 N.W.2d 139, 144 (Iowa 1983).  In discussing the arbitrator's authority, we have said:

> "Unless the parties specifically limit the powers of the arbitrator in deciding various aspects of the issue submitted to him, it is often presumed that they intend to make him the final judge on any questions which arise in the disposition of the issue, including not only questions of fact but also questions of contract interpretation, rules of interpretation, and questions, if any, with respect to substantive law."

*Id.* at 143 (citation omitted).  The agreement between the parties gave the arbitrator the authority, without limitation, to decide any dispute between the parties concerning the agreement.  Thus, the arbitrator had the authority to decide the attorney's fees and costs dispute and make any reductions as allowed by his interpretation of the agreement and the evidence.

We disagree with the district court's determination that substantial evidence did not support the arbitrator's decision to make the first

reduction in AGLW's claim for attorney's fees and costs. This reduction reduced AGLW's claim of over $115,000 to $83,485.08.

When a written contract allows for the recovery of attorney's fees, the award must be for reasonable attorney's fees. Iowa Code § 625.22. The burden is on the party seeking to recover fees " 'to prove both that the services were reasonably necessary and that the charges were reasonable in amount.' " *Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990) (citation omitted). The factors to consider when awarding reasonably necessary attorney's fees

> "include the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service. The district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case."

*Id.* (citation omitted).

The arbitrator first reduced AGLW's claim for attorney's fees and costs because the claimed fees and costs contained items that were incurred prior to the arbitration, were unrelated to the arbitration, were excessive, or were duplicative. This first adjustment is supported by substantial evidence and represents the reasonably necessary attorney's fees and costs AGLW expended in defending itself in the arbitration proceeding and the district court proceeding regarding Ales' request for acceleration of the New Note.

We do agree, however, with the district court that substantial evidence does not support the second reduction made by the arbitrator to balance the fees and costs between the parties. The agreement states the prevailing party is entitled to recover its attorney's fees and costs. In interpreting the agreement, the arbitrator had the authority to determine what fees and costs were reasonably necessary and award that amount to

the prevailing party. The evidence only supported the arbitrator's reduction of AGLW's claimed fees and costs that were incurred prior to the arbitration, were unrelated to the arbitration, were excessive, or were duplicative. Accordingly, neither the agreement, the evidence, nor the reasonably necessary standard for awarding attorney's fees allowed the arbitrator to balance the fees and costs between the parties. Consequently, we must vacate that part of the arbitrator's decision reducing the award of attorney's fees and costs to AGLW from $83,458.08 to $41,742.54.

### V. Conclusion and Disposition.

Because substantial evidence supports the arbitration award regarding Ales' breach of the covenant not to compete and the damages awarded for the breach, we affirm the decision of the district court on these issues. We reverse the district court's decision regarding the attorney's fees and costs award, confirm the arbitrator's decision that the reasonably necessary amount of the attorney's fees and costs AGLW expended to defend the arbitration and the district court case regarding Ales' request for acceleration of the New Note is $83,458.08, and vacate that portion of the arbitrator's award further reducing the fees and costs award to $41,742.54.

Ales claims if we vacate part of the arbitrator's decision, we must vacate the entire decision. We would agree with Ales if the portion of the award vacated did not go to a distinct and severable part of the award. *See Superior Constr. Co. v. Bentley*, 104 P.3d 331, 333 (Colo. Ct. App. 2004) (finding where there is a discrete and severable part of the award, which is identified as being beyond the arbitrator's powers, this portion of the award can be vacated and the rest affirmed). Here, where the attorney's fees and costs award is distinct and severable from the other portions of the award, a court can vacate that portion of the award. *See Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003)

(affirming the district court's vacation of portions of the arbitrators' award, including the vacation of an award for attorney's fees, where the arbitrators' decision "evidenced a manifest disregard for [the] law"); *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1195 (11th Cir. 1995) (vacating the portion of the district court's confirmation of the arbitrators' determination of attorney's fees).

Therefore, we remand the case to the district court for the court to confirm the arbitration decision in all respects except for the arbitrator's reduction of the attorney's fees and costs award from $83,458.08 to $41,742.54. On remand the district court shall enter judgment confirming the arbitrator's finding that Ales breached the covenant not to compete and the offsets of $145,650 against the New Note of as of September 17, 2002, and $49,480.10 as of July 1, 2003. The district court shall also enter judgment confirming that $83,458.08 is the reasonably necessary attorney's fees and costs expended by AGLW to defend the arbitration and the district court case regarding Ales' request for acceleration of the New Note. This amount shall be offset against the New Note as of March 13, 2004, the date of the arbitrator's final award on fees and expenses. Finally, because AGLW requested attorney's fees and costs in its application to the district court and on this appeal, the district court shall determine an additional award of attorney's fees and costs in favor of AGLW for AGLW's fees and costs incurred in the district court and in this appeal. Any additional attorney fees and costs award shall be offset against the New Note. If any amount determined by this court or the district court exceeds the amount due under the New Note, the court shall enter an appropriate judgment against Ales for the excess amount.

The costs of this matter are taxed to Ales.

**AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Ternus, C.J., and Appel, J., who take no part.