# In the Iowa Supreme Court

No. 23–0439

Submitted December 17, 2024—Filed January 31, 2025

**Principal Securities, Inc.,**

Appellee,

vs.

**Mark A. Gelbman,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Celene Gogerty, judge.

A financial advisor seeks further review of the court of appeals decision that affirmed a district court judgment vacating an arbitration award. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Jacob M. Oeth of Walker, Billingsley, & Bair, Urbandale, and Kevin D. Galbraith of The Galbraith Law Firm LLC, New York, New York, for appellant.

Angel A. West of Maynard Nexsen PC, Des Moines, and Kathryn Roe Eldridge of Maynard Nexsen PC, Birmingham, Alabama, for appellee.

**Waterman, Justice.**

In this appeal, we must decide whether the limited scope of judicial review under Iowa Code chapter 679A requires confirmation of an arbitration award vacated by the district court. A financial advisor terminated by his employer invoked his right to arbitrate. After a contested evidentiary hearing, the arbitrator ruled that the employer's description of events reported to regulators was misleading and recommended different language more favorable to the advisor. The employer filed this action in district court, pursuant to Iowa Code chapter 679A, to vacate the arbitration award. The district court vacated the award, finding it unsupported by substantial evidence. The advisor appealed, and we transferred the case to the court of appeals. A divided panel affirmed the district court. The dissent found that substantial evidence supported the arbitration award. We granted the advisor's application for further review.

Applying our highly deferential standard of review, we conclude that substantial evidence supports the arbitration award. For the reasons explained below, we vacate the decision of the court of appeals, reverse the district court, and remand the case with instructions to confirm the arbitration award.

## I. Background Facts and Proceedings.

Mark Gelbman began working as a financial advisor at Principal Securities Incorporated (Principal) in 2011. He was responsible for hundreds of client brokerage accounts. Gelbman's employment agreement with Principal required him to comply with all company rules as well as regulations promulgated by the Securities and Exchange Commission and other government agencies. His employment agreement provided that any dispute with Principal was subject to arbitration.

Gelbman's duties included conducting semi-annual reviews of his clients' portfolios. If changes were required, Gelbman would rebalance their accounts by

selling assets and purchasing replacements. Some of Gelbman's clients had nondiscretionary accounts. When rebalancing these accounts, Principal requires its employees to obtain specific approval from the client "within 24 hours (within one business day)" before executing the trades.

For many years, Principal used a platform that allowed its employees to click one button to simultaneously sell and purchase account assets. The purchases would not be made until the software determined the exact dollar amount generated from the sales. The software then triggered the purchase of new assets within that amount to ensure the account would not be overdrawn. The trades would occur on the same day, meaning employees needed to obtain client consent only once. In early 2020, however, Principal switched to a new system called Envestnet. Gelbman received minimal training on the new system. He used Envestnet to rebalance his client portfolios. Gelbman and Principal both were slow to realize that the rebalancing function on Envestnet worked differently, without a second reconciliation to ensure an account was not overdrawn.

Gelbman used Envestnet's rebalancing function on a client account in February 2020, and the system's lack of the second reconciliation resulted in a $15,000 deficiency. Once the problem was identified, Principal began requiring employees to rebalance accounts using a staged trading method. Staged trading requires employees to sell assets one day and purchase new assets a few days later after the sales have settled. Staged trading ensures the accounts are not overdrawn. Gelbman immediately began using staged trading to rebalance his clients' accounts.

From February 2020 to March 2021, Gelbman rebalanced accounts using the staged trading method. However, he continued his prior practice of only obtaining client consent once per each rebalancing for the planned sales and

purchases, at the front-end and without obtaining a second consent several days later when the approved replacement securities were acquired. Following a client's unrelated complaint about Gelbman, Principal began investigating his book of business. The investigation revealed Gelbman's practice of obtaining client consent only once during the rebalancing process and the fact that he had not noted which trades were specifically approved by his clients and which were not. On March 2, one of Gelbman's superiors raised concerns with him about his practices. After being notified of these yearlong mistakes, Gelbman texted the senior regional managing director, Scott Kruger, asking for a meeting and offering to resign. The next morning, Kruger wrote back, saying, "I think this is a mistake. How about 10:45am at the office." The two met, and Kruger reportedly talked Gelbman out of resigning.

Three weeks later, Gelbman was terminated for failing to obtain a second consent from his clients on the day he made trades. As required by industry regulations, Principal reported Gelbman's termination to the Financial Industry Regulatory Authority (FINRA) by completing a Form Uniform Termination Notice for Securities Industry Registration (Form U5). On that form, Principal reported that Gelbman was "discharged" due to his "failure to adhere to the firm's policies and procedures regarding discretionary trading." The form asked Principal whether "the individual [was] under internal review for fraud or wrongful taking of property, or violating *investment related* statutes, regulations, rules or industry standards of conduct?" Principal checked the box "Yes." Additionally, the form asked Principal whether "the individual [was] discharged . . . after allegations were made that accused the individual of . . . violating *investment-related* statutes, regulations, rules or industry standards of conduct?" Principal again checked the box "Yes." Principal's explanation for termination was that "[a]fter receiving a customer complaint regarding fee

disclosure and suitability of a variable annuity, the Firm reviewed Mr. Gelbman's book of business," and "[t]hrough its review, the Firm found Mr. Gelbman had failed to adhere to its policies regarding discretionary trading."

FINRA maintains a database known as the Central Registration Depository, where all the information submitted on a Form U5 is submitted. From that database, FINRA updates a program called "BrokerCheck" on its website. The program provides background checks for financial professionals. It discloses their job history, reasons for changing positions, and any complaints and enforcement actions lodged against them. As a result of Principal's submission, Gelbman's BrokerCheck profile stated that he was "discharged" due to his "failure to adhere to the firm's policies and procedures regarding discretionary trading."

Gelbman argued that the Form U5 information provided by Principal and his BrokerCheck profile does not fairly portray his exit from Principal. Specifically, he argued that the information provided by Principal on the Form U5 was misleading, in violation of FINRA rule 1122, and potentially defamatory, in violation of rule 8312(g)(1). *See* Fin. Indus. Regul. Auth., *FINRA Rules* r. 1122 [hereinafter *FINRA Rules*], https://www.finra.org/rules-guidance/rulebooks/finra-rules (last visited Jan. 31, 2025); *id.* r. 8312(g)(1). Accordingly, on June 14, Gelbman initiated arbitration proceedings through FINRA's dispute resolution services seeking alterations to the Form U5 information and, consequently, his BrokerCheck account.

A single arbitrator conducted an evidentiary hearing. Gelbman testified about his history with Principal and recounted the facts set forth above. He testified that he did not know he was required to obtain consent from his clients twice when using staged trading. He blamed his failure on Principal's lack of training. He noted that no one had noticed his error for well over a year even

though all trades were reviewed by supervisors. Gelbman was cross-examined by Principal's representative. Gelbman admitted to knowing the consent policy. He also acknowledged that the policy lacked an exception for staged trading. Additionally, Gelbman conceded that the information provided by Principal on the Form U5 was "technically not unfactual."

The arbitrator issued an award in Gelbman's favor recommending changes to the Form U5 information as follows:

- Continue indicating that Gelbman was "discharged."

- Replace the explanation for his termination with the following language: "Mr. Gelbman unknowingly failed to abide by a technical trading requirement for nondiscretionary clients. A program change triggered this technical requirement. Principal Securities, Inc.'s own actions, especially incomplete training, largely caused this failing. Moreover, during its investigation, [Principal] Securities, Inc. encouraged Mr. Gelbman not to resign."

- Change the answer indicating whether Gelbman was under internal investigation from "Yes" to "No."

- Change the answer indicating whether Gelbman's termination was due to allegations that he violated investment-related statutes, regulations, rules or industry standards from "Yes" to "No."

Iowa Code chapter 679A provides for limited judicial review of arbitration awards. Specifically, that chapter permits a court to vacate or amend an award for several reasons, including a finding that the award is not supported by substantial evidence. Iowa Code § 679A.12(1)(*f*) (2022). Principal filed this action in the Iowa District Court for Polk County, seeking to vacate the arbitration award on the sole ground that it was not supported by substantial evidence. Gelbman's response argued that the dispute was governed by the Federal

Arbitration Act (FAA) and that the case should be dismissed as preempted because federal law does not permit courts to vacate awards as unsupported by substantial evidence. *See* 9 U.S.C. § 10 (2018). The district court agreed with Principal, applied Iowa law, and concluded that Principal's provided Form U5 information was not defamatory under Iowa tort law. The district court vacated the award, stating, "Nothing presented in the evidence supports Respondent's assertion and indeed, the Court finds the amount and weight of evidence suggests exactly opposite of the Award." The court also criticized the arbitrator for making no separate findings of fact to facilitate judicial review.

Gelbman appealed, and we transferred the case to the court of appeals. On appeal, Gelbman abandoned his argument that the dispute was governed by the FAA and instead argued that under Iowa law, the award was supported by substantial evidence. A divided three-judge panel affirmed. The majority held that the information provided by Principal on the Form U5 was not defamatory or misleading. The majority found that because the information on the Form U5 was true, it was not defamatory under Iowa tort law and further determined that the information was not misleading because "there is no evidence—let alone substantial evidence—that the form was calculated to be misunderstood or give a wrong impression." The majority found that the arbitration award was not supported by substantial evidence. The dissent found that "a reasonable person could easily conclude that the original statements would lead a third party to a mistaken belief about the circumstances of his termination." The dissent concluded that the deferential standard of review for arbitration awards under Iowa law required reversal of the district court.

We granted Gelbman's application for further review.

## II. Standard of Review.

Gelbman abandoned an argument he made in district court that the FAA governs review of this award.[1] On appeal, the parties agree that our review of this arbitration award is governed by Iowa law. Accordingly, we will apply Iowa Code chapter 679A and Iowa precedent rather than the FAA and federal precedent. *See, e.g., Weinar v. Lex,* 176 A.3d 907, 913 (Pa. Super. Ct. 2017) ("Although . . . the FAA robustly preempts any state law that interferes with the enforceability of an agreement to arbitrate, it creates 'no federal policy favoring arbitration under a certain set of procedural rules' and leaves the parties free to seek enforcement of their arbitration award under state law, rather than the FAA." (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 476 (1989))).

We review an appeal from a district court decision to vacate an arbitration award under Iowa Code section 679A.17(2) "for correction of errors at law." *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.,* 728 N.W.2d 832, 839 (Iowa 2007). "However, our review is limited." *Id.* at 839; *see also Humphreys v. Joe Johnston L. Firm., P.C.,* 491 N.W.2d 513, 514 (Iowa 1992) ("Judicial review of arbitration awards is very limited in Iowa."). "Our function is *not* to determine whether the arbitrator has correctly resolved the grievance." *Ales,* 728 N.W.2d at 839 (emphasis added). This is because "[o]ur law favors arbitration as an alternative to civil litigation." *$99 Down Payment, Inc. v. Garard,* 592 N.W.2d 691, 694 (Iowa 1999). "Arbitration avoids the expense and delay generally

---

[1]The district court applied Iowa law in its analysis. Gelbman's appellate briefing does not argue that we should apply the FAA to reverse the district court. *See State v. Jackson,* 4 N.W.3d 298, 311 (Iowa 2024) ("A party forfeits an issue on appeal when the party fails to clearly identify an issue on appeal."); *see also* Iowa R. App. P. 6.903(2)(*g*)(3) (2023) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). The court of appeals correctly recognized Gelbman abandoned his argument under the FAA.

associated with traditional civil litigation, and draws on experts in the specific area of the dispute to resolve the matter." *Id.* We reiterate the following:

> To allow courts to "second guess" an arbitrator by granting a broad scope of judicial review would nullify the very advantages of arbitration. Moreover, limited judicial review gives the parties what they bargain for in agreeing to binding arbitration, not merely arbitration which is binding if a court agrees with the arbitrator's award.

*Id.* (citation omitted). "The fact that the relief awarded could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Iowa Code § 679A.12(2).

"A refined quality of justice is not the goal in arbitration matters. Indeed such a goal is deliberately sacrificed in favor of a sure and speedy resolution." *Humphreys*, 491 N.W.2d at 515 (quoting *Reicks v. Farmers Commodities Corp.*, 474 N.W.2d 809, 811 (Iowa 1991) (en banc)). "As long as an arbitrator's award does not violate one of the provisions of section 679A.12(1), we will not correct errors of fact or law." *Ales*, 728 N.W.2d at 839.

### III. Analysis.

Principal "has the burden of proof to show" the invalidity of the award. *First Nat'l Bank v. Clay*, 2 N.W.2d 85, 91 (Iowa 1942) (quoting *Seibert Bros. & Co. v. Germania Fire Ins.*, 106 N.W. 507, 508 (Iowa 1906)). Principal challenges the arbitration award on one ground alone: that the award is not supported by substantial evidence. *See* Iowa Code § 679A.12(1)(*f*).[2] The arbitrator was

---

[2]Iowa Code section 679A.12(1) sets forth the grounds for vacating an arbitration award and provides,

> Upon application of a party, the district court shall vacate an award if any of the following apply:
>
> > *a.* The award was procured by corruption, fraud, or other illegal means.
> >
> > *b.* There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of a party.

empowered to recommend revisions to the Form U5 information upon a finding that Principal's language was "misleading." *See FINRA Rules* r. 1122.[3] In our view, substantial evidence supports the arbitrator's determination that Principal's language was misleading. And we conclude that substantial evidence supports the revisions recommended by the arbitrator.

Our substantial-evidence review of arbitration awards is limited. "Generally, evidence is substantial if a reasonable person would accept the evidence as sufficient to reach a conclusion." *Humphreys*, 491 N.W.2d at 516. "[T]he ultimate question is whether the evidence supports the finding actually made, not whether the evidence would support a different finding." *Ales*, 728 N.W.2d at 839 (alteration in original) (quoting *State v. Dohlman*, 725 N.W.2d 428, 430 (Iowa 2006)). "A mere general allegation that the award is unsupported by substantial evidence is insufficient." *Humphreys*, 491 N.W.2d at 516. "[E]very reasonable presumption will be indulged in favor of the legality of an arbitration award." *Id.* at 514.

---

*c.* The arbitrators exceeded their powers.

*d.* The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or conducted the hearing contrary to the provisions of section 679A.5, in a manner which prejudiced substantially the rights of a party.

*e.* There was no arbitration agreement, the issue was not adversely determined in proceedings under section 679A.2, and the party did not participate in the arbitration hearing without raising the objection.

*f. Substantial evidence on the record as a whole does not support the award.* The court shall not vacate an award on this ground if a party urging the vacation has not caused the arbitration proceedings to be reported, if the parties have agreed that a vacation shall not be made on this ground, or if the arbitration has been conducted under the auspices of the American arbitration association.

(Emphasis added.)

[3]FINRA rule 1122 provides, "No member or person associated with a member shall file with FINRA information with respect to membership or registration which is incomplete or inaccurate so as to be misleading, or which could in any way tend to mislead, or fail to correct such filing after notice thereof." *FINRA Rules* r. 1122.

Principal argues that Gelbman, in the district court, relied entirely on an FAA-preemption argument that he later abandoned on appeal and thereby failed to preserve error on his claim that substantial evidence supports the award. We disagree. Gelbman's district court advocacy conveyed his position that the award should not be vacated for lack of substantial evidence. The district court devoted several pages to its substantial evidence review. We conclude the issue is preserved for our review.[4]

The district court and court of appeals majority erred by relying on tort law definitions of defamation to vacate the award. The arbitrator was entitled to find that Principal's provided Form U5 information was misleading under FINRA rule 1122. Gelbman's testimony at the arbitration hearing is sufficient to support the award.[5] As the dissent on the court of appeals accurately summarized:

> The gist of Gelbman's testimony tracks the revised termination explanation awarded by the arbitrator. According to the testimony, when performing the annual rebalancing of the securities accounts of about thirty clients, Gelbman unknowingly violated Principal policies that required him to get consent for the rebalancing trades no earlier than the same day the trades were made. He got each client's authorization once—for both the buying and selling—on the day that he started the rebalancing process by selling their securities. But because of a technological limitation in Principal's program for conducting the trades, the corresponding buy trades had to be made on a later day after the sell trades had settled. And Gelbman did not obtain a second authorization on the

---

[4]The district court criticized the arbitrator for not making any findings of fact on the record. However, FINRA rules do not require an arbitrator to make findings of fact unless both parties request it in advance. *FINRA Rules* r. 13904(g)(3) ("Parties must make any request for an explained decision no later than the time for the prehearing exchange of documents and witness lists under Rule 13514(d)."). The parties did not request specific factfinding or an "explained decision." And as we have long recognized, "Arbitrators need not disclose the facts or reasons behind their award unless the arbitration agreement or submission, or an applicable statute, requires them to do so." *Reicks*, 474 N.W.2d at 811 (quoting 5 Am. Jur. 2d *Arbitration and Award* § 126, at 614 (1962)). No further factfinding was required in this arbitration.

[5]Substantial-evidence review is available only if the arbitration proceedings were "reported." Iowa Code § 679A.12(*f*). The arbitration hearing was audiotaped, and a transcript was prepared from the audio recording. The parties do not dispute the accuracy of the transcription or challenge satisfaction of the reporting requirement.

second day from each client as technically required under Principal's same-day policy.

Gelbman said he did not realize he needed two authorizations. Principal's prior trading program had been able to perform both the sell and buy trades in a different manner not staged over multiple days. So he had always obtained only a single authorization for annual rebalancing. And Gelbman testified that he was never trained that rebalancing with the new program required a second client authorization under Principal's policies. Gelbman also testified—and submitted a supporting text message exchange—that he offered to resign while Principal was looking into these issues and a supervisor encouraged him not to resign.

Comparing Gelbman's testimony with what Principal originally reported, a reasonable person could easily conclude that the original statements would lead a third party to a mistaken belief about the circumstances of his termination. By saying that the investigation began with a customer complaint about fee disclosures and suitability, it could mislead a third party to think that the ultimate policy violations were of a similar seriousness or affected a customer. And given the range of egregious conduct that could violate "policies regarding discretionary trading," the original barebones explanation—especially in a report of a violation resulting in termination—could mislead one to believe that Gelbman did something much more serious than unknowingly getting a second authorization a day or two earlier than he should have.

Principal did not call any witnesses to offer a different explanation of the circumstances of Gelbman's termination or dispute the seriousness or obviousness of the violations. It just aggressively cross-examined Gelbman and submitted documentary evidence, largely focused on proving that Gelbman did indeed violate its internal policies and should have known that he did. And the arbitrator found Principal's defense unpersuasive.

Of course, a reasonable arbitrator could have chosen not to believe Gelbman and denied his requested relief. But that's not the question. *See Ales*, 728 N.W.2d at 839. Based on Gelbman's testimony, a reasonable arbitrator could conclude that the challenged statements were misleading, as the arbitrator understood that term, and that the revised statements the arbitrator crafted more accurately reflected the circumstances of Gelbman's termination. Indeed, we must presume that the arbitrator did so here.

(Footnote omitted.) The dissent also accurately summarized the evidence supporting the arbitrator's revisions to two other questions:

> So too did substantial evidence support the arbitrator's award changing the answers from "Yes" to "No" on two questions about whether the termination related to an allegation and investigation of Gelbman's violating "statutes, regulations, rules or industry standards of conduct." While Principal argued that Gelbman's contact also violated a FINRA rule, there was abundant evidence that he was terminated for violating Principal's internal policies—a basis not included in the questions. Principal gave the internal-policy-violation basis in letters to many regulating entities included in the record—not to mention its original explanation of termination that is the subject of this expungement challenge: "Through its review, [Principal] found Mr. Gelbman had failed to adhere to *its policies* regarding discretionary training." (Emphasis added.)

We agree that substantial evidence in the record as a whole supports the arbitration award, and Principal's challenge to the award therefore fails.

Under our governing standard of review, confirmation of the award is required. The district court erred by substituting its judgment for the arbitrator's.

**IV. Disposition.**

For the foregoing reasons, we vacate the decision of the court of appeals and reverse the district court judgment. We remand the case with directions for the district court to confirm the arbitration award in full.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

McDermott, J. takes no part.