THE UMATILLA FRUIT COMPANY v. SAM W. CAMPBELL, SAM W. JENSCH, acting and making claim as the executors, etc.

167 So. 370.

Division B.

Opinion Filed March 28, 1936.

Rehearing Denied April 28, 1936.

*Duncan, Hamlin & Duncan* and *John S. Lavin,* for Plaintiff in Error;

*James G. Sharon* and *Sam W. Jensch,* for Defendants in Error.

TERRELL, J.—In November, 1926, Clyde Campbell leased to The Uamtilla Fruit Company his citrus grove located at Paola, Florida, for an annual net rental of $6,000.00 payable at the close of each calendar year. In March, 1935, defendants in error as executors of the estate of Clyde Campbell, filed their declaration in this case in the Circuit

Court of Seminole County in which they allege the death of Clyde Campbell and failure of plaintiff in error to pay the rent due January 1, 1935, for which they demanded judgment in the sum of $6,000.00, with interest. A plea of the general issue and one by way of confession and avoidance were in due course entered. The plea in confession and avoidance admitted that the rental for 1934 had not been paid, but invoked the provision of the lease exempting it from payment in the event of a freeze destroying the crop. It alleged that such a freeze took place on December 11 and 12, 1934. When the case came on for trial the former plea was withdrawn and trial was had on the issue made by the plea of confession and avoidance to the declaration, resulting in a verdict and judgment for $6,000.00 in favor of the plaintiff on which final judgment was entered and to which the instant writ of error was prosecuted.

It is first contended that the court below misintrepreted the word "destroy" as used in the lease executed by Clyde Campbell to the Umatilla Fruit Company.

The pertinent part of the lease provided:

"It is also distinctly understood and agreed between the lessors and the lessee that in the event the bloom or any citrus crop on said property shall be destroyed by a freeze or storm, that the annual payment for this lease for any such year shall not be paid to the lessors, their heirs or assigns, and the lessee, its successors and assigns, shall be fully released from such payment and succeeding annual payments until a new crop on said trees shall equal the average production of any former four-year season, it being the intention hereof that in the event any yearly crop of citrus fruit shall be destroyed, as aforesaid, that the lessee shall be relieved from the payment of said annual rental until a new crop shall equal in quantity the average of any one year, taking

into consideration any previous four-year crops just preceding the crop for the year 1926."

The trial court construed the word "destroy" to mean that the fruit on the grove leased was rendered useless for the purpose for which it was used or intended to be used. A number of judicial definitions of the word destroy as used in fire insurance policies and lease contracts are cited in support of this definition.

Our conclusion is that such a definition of the word "destroy" as used in the lease brought in question was misleading. In fact, the terms of the lease, we think, support this conclusion. The latter part of the provision of the lease as quoted declares it to be the intention of the parties "that in the event any yearly crop of citrus fruit shall be destroyed, as aforesaid, that the lessee shall be relieved from the payment of said annual rental until a new crop shall equal in quantity the average of any one year, taking into consideration any previous four-year crops just preceding the crop for the year 1926."

This provision of the lease should be read in connection with other provisions requiring the payment of taxes and insurance, the fertilization, spraying, and general upkeep, packing and marketing the crop, and annual net rental of $6,000.00 per year, the lease to run for twenty years with option to purchase for $75,000.00 any time before it expired. To hold that the word "destroy" means to render useless for the purpose intended infers that the entire crop on the trees when the freeze came was rendered unfit for marketing purposes. If all the provisions of the lease are read together no such inference can be reached. It would be difficult to determine with mathematical exactness just what per cent. of destruction was contemplated by the word "destroy," but certainly in a contract of this kind it does not contem-

plate total destruction. This is essentially a jury question under the proper instruction, but any damage that reduced the marketable part of the crop materially below the average of the crops produced the four years immediately prior to 1926 would not be held erroneous.

The record discloses that a freeze of great intensity occurred in Florida on December 11 and 12, 1934, that it did great damage to the grove and crop of citrus fruits leased by the plaintiff in error, only 2,000 boxes of which had been marketed, that a fair estimate of the crop for that year was 26,000 boxes, that a fair estimate of the crop for that year was 26,000 boxes and that 13,000 boxes were packed and marketed after the freeze, all of which was damaged to such an extent that it did not bring marketing charges. The evidence as to what this fruit brought was in conflict, but it was an element to be considered in measuring damages.

In view of these considerations to hold that the word "destroy" meant to render useless for the purpose for which the property was used or intended to be used was, under the terms of the lease, misleading and prejudicial. In other words, such an interpretation infers that the effect of the December, 1934, freeze was to render the crop of fruit then in being of no value whatever. The effect of this ruling was to require the plaintiff in error to show that the freeze caused a total destruction of the crop before it could claim the protection of the lease exempting it from the annual rental until the grove was restored.

The charge as to rendering useless for the purpose intended should have been qualified to mean that "useless" did not contemplate one hundred per cent. destruction. The price received for the fruit had nothing whatever to do with the issues in the case unless the price received for that part of it after the freeze can be shown to have been influenced

by the frozen condition of the fruit. For that purpose only it becomes material. Since 2,000 boxes of the fruit was shipped before the freeze the plaintiff in error would have been required to pay a portion of the annual rental in any event, but the record does not disclose that the cause was submitted to the jury in such a manner as to apportion the damages, if in fact they should have been apportioned. For these reasons we think the case should be submitted to another jury with instruction to assess damages in keeping with the view as expressed in this opinion. If the evidence shows complete destruction or approximating that the lessee should be required to pay such a part of the annual rental as 2,000 boxes bears to the whole crop. If the evidence shows that 13,000 boxes picked and placed in cold storage after the freeze were so depreciated by being frozen that they brought much less than the market price the lessee should not be penalized for trying to salvage them.

The next question urged charges error in refusing to admit evidence to show damage by proving the sales price of fruit shipped from the Campbell grove before and after the December, 1934, freeze and by showing a comparison of the prices of fruit shipped from the Campbell grove and groves from other sections of the State.

Any evidence tending to show damage to the fruit on the Campbell grove as a result of the freeze was relevant and should have been admitted. We have examined the evidence rejected and do not hold the trial court in error for refusing to admit it because the questions propounded were not properly qualified as to grade and class of fruit and locality of shipment.

The concluding question urged is predicated on the refusal of the trial court to permit the plaintiff in error, de-

fendant below, to open and close the argument at the conclusion of the trial.

Plaintiff in error bases its claim to the opening and closing argument on the fact that the action was on a written contract in which the damages were liquidated and there was no plea to the declaration except one of confession and avoidance grounded on the affirmative defense provided in the contract in favor of the lessee in the event of storm or freeze which plaintiff in error (lessee) was required to prove.

The rule is approved in some states that where the plea of the general issue is waived and the defendant pleads specially interposing a plea of avoidance or justification and issue is joined on that plea or if the defendant's admissions place on him the burden of proof he is entitled to open and close the argument. Puterbaugh's *Common Law Pleading* (10th Edition) 1309; Thompson on *Trials,* Section 231.

This rule is apparently predicated on the theory that the defendant carries the burden of proof at all times and that such burden never shifts to the plaintiff. In the case at bar the real issue was whether under the circumstances the defendant was required to pay the rent fixed in the lease. The plea on which the case was tried and evidence was submitted on this issue by defendant denied that it was due. No material evidence on the issue was submitted by the plaintiff and apparently the burden of proof was not shifted to the plaintiff during the trial. Defendant consequently brought itself within the rule as contended for.

Under the practice in this jurisdiction the matter of controlling concluding arguments is one largely in the discretion of the trial court. The record does not disclose that harmful error was committed by denying the defendant the

opening and concluding argument, but on a new trial if defendant falls within the rule it should be granted.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.