Rodney L. YOST d/b/a Yost Construction, Appellant,

v.

CITY OF COUNCIL BLUFFS, Iowa, Appellee.

No. 90–87.

Supreme Court of Iowa.

June 19, 1991.

F.E. Ebersold of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant.

Robert L. O'Brien, Asst. City Atty., Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This appeal by plaintiff, Rodney L. Yost d/b/a Yost Construction, is from a district court decision denying Yost's claim that the City of Council Bluffs breached its contract with him for the disposal of tree debris. The question is whether the district court erred in dismissing Yost's petition on the ground that the City was legally excused from performing the contract. We conclude that it did, and therefore reverse the district court's order and remand for further proceedings.

On July 15, 1988, a tornado struck Council Bluffs causing tremendous damage. Millions of dollars worth of trees were either damaged or destroyed. Needing a place for the refuse, the City reopened a tree dump which had been closed for several years and began considering how to dispose of the tree debris. Yost approached the City with a plan. He would separate white goods and debris that should not be burned for separate disposal. The trees and other flammable goods would be placed in a trench, burned and buried. Discussions ensued between city officials and Yost culminating in a signed agreement on October 25, 1988. Yost agreed to separate the debris, construct trenches at the tree dump, burn the tree debris by forced air induction, and bury the resulting ash and debris at the dump site with two feet of clean fill dirt. The City agreed to pay Yost $135,500 for the complete job.

After executing the contract, Yost purchased a front-end loader and two trailers to be used in the job. However, in November 1988, prior to Yost's beginning any work, the tree dump caught fire destroying much of the tree debris and the tree dump. Yost and the city officials agreed that the destruction of the trees had eliminated part of the project. On further consideration, the City decided that the fire had fortuitously removed the part of the contract for which it really needed Yost and the rest of the work could be done by anyone. It then notified Yost that the contract was terminated and completed the job using city employees. To finish the project cost the City $75,000.

On March 20, 1989, Yost filed a petition at law seeking recovery for his expenses and lost profits as a result of the City's breach of the disposal contract. The district court determined that the City was legally excused from performing the contract and dismissed Yost's petition. Yost appeals this determination and the resulting order.

■ Our scope of review is determined by the nature of the trial proceedings. *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 257 (Iowa 1991). This action was filed and tried at law. Therefore, our review is for correction of errors at law. Iowa R.App.P. 4. If the trial court's findings of fact are supported by substantial evidence and were not induced by an erroneous view of the law, they will be sustained. *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 209 (Iowa 1975). However, we are not bound by findings of fact resulting from the application of erroneous rules of law, nor are we bound by the trial court's determinations of law. *Id.*

The City initially attempts to dismiss the allegations raised by Yost in this appeal by contending that no valid and enforceable contract ever existed between the parties. In support of its contention, the City argues that because Yost failed to complete all of the conditions precedent to form the contract, the proposed contract was a nullity. We, like the district court, find this argument to be meritless and conclude that a valid and enforceable contract was in full force and effect at the time of the fire.

The City also argues that even if there was a contract, it was rendered unenforceable when the subject matter of the contract was destroyed by the unintentional fire. More specifically, the City contends that destruction of the subject matter of the contract made performance by Yost impossible and therefore voided the contract. The City's action in terminating the contract came from its view that Yost was only hired because of his ability to trench

and burn the trees utilizing forced air induction which produced little or no smoke. The work was not submitted for competitive bidding because it was unique, and Yost was the only one available to do it. When the trees burned by accident, the City claims there was nothing left of the contract for which the City had specially bargained.

The City would be correct if the sole subject matter of the contract was the burning of the trees. The contract, however, contains several clauses relating to separate subject matters. Only a portion of the subject matter, and therefore only a portion of the contract, was destroyed by the fire. The conditions that rendered performance partially impossible did not terminate the contract, and did not vitiate what remained to be done that was capable of execution. *See* 18 S. Williston, *A Treatise on the Law of Contracts* § 1956, at 146 (3d ed. 1978).

■ While in some cases the conditions may amount to a substantial abrogation of the entire contract, in others, they may relate to an insignificant part of a contract. Regardless of the degree, they excuse performance only to the extent to which performance is impossible, and leave what has been done valid permitting a recovery therefor, and may not excuse performance of the remaining work. *See generally Umatilla Fruit Co. v. Campbell*, 123 Fla. 484, 167 So. 370 (1936).

■ There is an implied condition in executory agreements to the effect that their performance shall not be rendered impossible by the intervention of unforeseen, accidental, and uncontrollable superior agencies. Their performance will be excused when it is prevented by such agency, as where there is a contract for the delivery of specific property at a future time, and before the time of delivery arrives the property is destroyed by inevitable accident. *See Board of Educ. v. Townsend*, 63 Ohio St. 514, 59 N.E. 223, 224 (1900). But it is an important part of that rule that the intervention of such inevitable accident will not excuse performance when the essential purposes of the contract are still capable of substantial accomplishment, although a literal performance has been physically impossible. *Id.*

■ The contract in this case called for Yost to:

1. Construct at the northern end of the tree dump $12 \times 8 \times 40$ foot trenches to contain debris while it is burning.

2. Separate white goods and debris which should not be burned for other disposal.

3. Load flammable debris into trench and burn, utilizing forced air induction to burn very hot and produce little or no smoke. Burning will continue on a 24–hour basis so long as conditions permit and will be constantly monitored. Burning will be stopped immediately should problems of smoke or spreading fire develop.

4. Bury at the dump site with clean fill dirt all ashes, stumps which cannot be burned completely, and other minor material which does not burn. Final dirt cover over these materials will be two feet.

. . . .

Additional work required in disposal of debris which is not burned will be billed in the following manner:

Loading and hauling of debris to landfill @ $70.00 per load.

Landfill disposal costs to be reimbursed at actual cost.

While it is clear that after the fire the work of burning was reduced, the other obligations remained unaffected.

Yost testified that after the fire more than three-fourths of the work remained to be done. He said the fire destroyed limbs and "small stuff" that burn easily. Forced air burning would not have been needed to remove this matter so it would not have taken much time for this work, he stated. What was left was stumps and trunks.

The contract called for these to be burned and buried in trenches, and white goods and other debris not to be burned to be disposed of otherwise. Final fill dirt over all materials was to be placed to a depth of two feet.

Restatement (Second) of Contracts section 270 (1979) states in relevant part that:

Where only part of an obligor's performance is impracticable, his duty to render the remaining part is unaffected if

(a) it is still practicable for him to render performance that is substantial, taking into account any reasonable substitute performance that he is under a duty to render;

. . . .

Section 270 indicates that an obligor is not relieved from performing the remaining duties under a contract which has been rendered partially impossible or impracticable to perform in its entirety. It is only when an obligor cannot render performance which is substantial to the remaining portion of the contract that relief is given from the duty to complete the remaining portions thereof.

The district court concluded that when the fire made it impractical to perform part of the contract, the rest of the contract was enforceable only if it constituted a "substantial" part of the contract. Since the forced air induction burning was the material portion of the contract, the remaining work was not a "substantial" part of the contract. Based on this standard, the court held that the City did not breach the contract. In this analysis the court erred by misapplying the legal standard.

The district court's interpretation and application of the substantial element presupposed that the ability to clear away and bury the debris was not unique. Thus, it was not a substantial part of the contract. We believe this is not the standard intended by section 270 of the Restatement. Substantial in this context is something that is worthwhile, of value to the other contracting party, that requires a reasonable amount of effort, labor or expense to complete, as contrasted to an act of de minimus effect or of no real importance to the contractual purpose of accomplishment. It is clear that the performance remaining under Yost's contract was sub-stantial since it cost the City $75,000 to complete the work.

Even though the contract was rendered partially impossible or impracticable to perform in its entirety due to the fire, Yost was still in a position to substantially perform the remaining duties to which he was obligated under the original agreement. Applying this legal standard, we hold that the City breached its contract with Yost.

"Under Iowa law, when a contract has been breached, the innocent party is generally entitled to be placed in a position he would have occupied had there been performance." *Lakota Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 639–40 (8th Cir.1975). Foreseeability of the type of damage is the focus of Iowa law. These damages are generally categorized as consequential damages. *Id.* at 640.

Yost asked the City to pay damages for the breach of contract consisting of the cost of equipment bought specially for use on this job and loss of profit. In *C.C. Hauff Hardware, Inc. v. Long Manufacturing Co.*, 260 Iowa 30, 35, 148 N.W.2d 425, 428 (1967), we held that expenditures made by plaintiff in reliance on contractual obligations were a proper measure of damages when defendant breached the contract. Quoting 22 American Jurisprudence Second *Damages* section 159, at 227–28, we said:

"A party who has entered into a contract may incur certain expenses in reliance on that contract being performed. Where the other party to the contract defaults on his promise, those reliance expenses may be valueless to the nondefaulting party. * * * In this type of situation— where expenses were incurred in reliance on the contract and are valueless to the nondefaulting party—courts award reliance expenses if those expenses were foreseeable by the defaulting party at the time the contract was entered into."

*C.C. Hauff Hardware*, 260 Iowa at 35, 148 N.W.2d at 428.

Lost profits are also a permissible item of damages so long as the profits are not based on conjecture and speculation.

*Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 284–86 (Iowa 1979); *see also Repinski v. Clintonville Federal Sav. & Loan Ass'n*, 49 Wisc.2d 53, 181 N.W.2d 351 (1970).

We reverse and remand for a new trial only on the question of damages sustained by Yost for the breach of contract consistent with the rules of law cited herein. In this nonjury case we hope the parties will agree to include in the record on retrial much of the evidence presented in the first trial. We do not, however, limit the scope of the evidence on damages on retrial.

REVERSED AND REMANDED.