# IN THE COURT OF APPEALS OF IOWA

No. 23-0796
Filed May 8, 2024

**MILTNER INSURANCE SERVICES, LLC,**
Plaintiff-Appellee/Cross-Appellant,

**vs.**

**CASEY M. ROBERTS,**
Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Adams County, Brad McCall, Judge.

Parties appeal and cross-appeal the district court's remand ruling on remedies. **AFFIRMED ON APPEAL; AFFIRMED AND REMANDED WITH DIRECTIONS ON CROSS-APPEAL.**

Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant/cross-appellee.

Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellee/cross-appellant.

Heard by Bower, C.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

This appeal involves an ongoing contract dispute between an employer, Miltner Insurance Services, LLC, and its former employee, Casey Roberts. In round one, we found the district court erred in dismissing Miltner's breach-of-contract claim for Roberts's retention of the company's client list in violation of a non-piracy agreement. We remanded the case to the district court to determine damages and other relief to which Miltner was entitled. In round two, after a non-evidentiary hearing on remand, the district court awarded Miltner $37,868 in liquidated damages. Roberts appeals, claiming the liquidated-damages provision in the contract is unenforceable because it constitutes a penalty. Miltner cross-appeals, arguing that it should have been awarded more liquidated damages and requesting an award of appellate attorney fees.

## I.    Background Facts and Proceedings

Borrowing from our prior opinion, "Roberts began her employment with Miltner . . . in 2012 as a customer services representative. Long-time employees Jayne Templeton and Katrina Ogburn collectively own Miltner, having bought it in January 2018." *Miltner Ins. Servs., LLC v. Roberts*, No. 21-0893, 2022 WL 2347856, at *1 (Iowa Ct. App. June 29, 2022). The parties entered into the non-piracy agreement that is the subject of this litigation in December 2018.[1] *Id.* It provided:

> CONFIDENTIALITY AND NON-DISLCOSURE. Employee shall at no time divulge or disclose any information regarding the business of the Corporation, including, but not limited to customer

---

[1] The December 2018 agreement was the second non-piracy agreement between the parties. The first was entered into shortly after Templeton and Ogburn bought the business, but it is not relevant to this litigation.

lists, renewal lists, information concerning customers, any other matter connected with or pertaining to the business of the Corporation. It is understood and agreed by the parties hereto that all such information . . . shall, at all times, remain the sole and exclusive property of the Corporation. Upon termination, Employee will return to Corporation all records or documents of any kind or character which contain, evidence or pertain to information regarding the business of the Corporation.

*Id.*

The agreement also "provided for liquidated damages, injunctive relief, and legal expenses upon a breach. The liquidated-damages portion gave Miltner different remedies for breaches occurring in the first, second, and third years following termination of Roberts's employment." *Id.* at *2. Those remedies were:

LEGAL EXPENSES AND INJUNCTIVE RELIEF. In the event of the violation of provisions of this Agreement, Employee understands and agrees that damages may not constitute an adequate remedy to the Corporation, therefore the corporation may seek injunctive or other extraordinary relief. Employee and Corporation recognize that monetary damages are insufficient to compensate corporation for breach by Employee. In the event of any breach of the Agreement by Employee, Corporation shall be entitled to damages as follows: for any breach occurring within the first twelve (12) month period immediately following the date of termination of employment, damages shall be equal to the Employee's annual salary at the time of employment termination; for any breach occurring within the second twelve (12) month period immediately following the date of termination of employment, damages shall be equal to 75% of the Employee's annual salary at the time of employment termination; for any breach occurring within the third twelve (12) month period immediately following the date of termination of employment, damages shall be 50% of the Employee's annual salary at the time of employment termination.

Employee also agrees that in the event a suit or action is instituted by Corporation against employee for violation of any of the agreements contained in this Contract of Employment, Employee will pay to Corporation, in addition to any costs or disbursements provided by law, all attorneys' fees and other expenses of litigation incurred as a result of said suit. . . .

Long story short, "Roberts sent Miltner's client list to her private email before she signed the second non-piracy agreement," then she resigned from her employment with Miltner in January 2019 and accepted employment with a competing insurance group as an independent agent with an "office roughly two blocks away." *Id.*

Miltner sued Roberts in May 2020, alleging multiple violations of the non-piracy agreement. Relevant here, "count three was for breach of contract for Roberts's retention of Miltner's client and renewal lists, in violation of the confidentiality and non-disclosure provision of the agreement." *Id.* Following a trial in May 2021,

> the district court found the December 2018 non-piracy agreement to be valid and enforceable, but the court determined it only prohibited Roberts from using Miltner's proprietary information to solicit clients from Miltner's customer base and from servicing current clients of Miltner. The court found Roberts's mere possession of the client list did not violate the agreement, and Miltner did not prove she used the client list to steal clients.

*Id.*

On appeal, Miltner challenged the district court's conclusion that Roberts's mere possession of the client list did not amount to breach. *Id.* Our court interpreted the confidentiality and non-disclosure provision of the contract as follows:

> The agreement provides two separate mandates. The first sentence prohibits disclosure of proprietary information, including the customer list, "at any time," which would encompass both before and after termination. The final sentence requires Roberts to return any such proprietary information to Miltner upon termination. So the non-piracy agreement prohibits not just disclosure or use of the client list, but also possession of the list after employment ends. The latter restriction prohibits exactly what Roberts admittedly did, emailing

> herself Miltner's client list and retaining—i.e., merely possessing—that list after terminating her employment with the company.

*Id.* at *3 (footnotes omitted). Based on this interpretation, we reversed the district court's denial of relief on count three and remanded for a determination of "damages and other relief to which Miltner is entitled." *Id.* at *4.

On remand, the parties agreed that damages should be determined based on the record already made at the May 2021 trial. At that trial, Templeton and Ogburn testified that they bought the company in January 2018 for $1.5 million, $1.42 million of which was attributable to "goodwill and the client list." Templeton described the client list as "a list of our customers that we have online. So we can enter the customer's name, and then it will show us their policies, their personal information, and their renewal dates." The personal information included the clients' "vehicles, their homeowners coverage, any coverages of the policies, and then . . . dates of birth, Social Security numbers, driver's license numbers," as well as phone numbers and addresses.

As noted, Roberts buccaneered the client list before ending her employment with Miltner by emailing it to her private email account. Roberts testified that she deleted the list after she received a cease-and-desist letter from Miltner at the end of October 2019. But a letter her attorney sent to Miltner in November said Roberts was "currently in possession of the client list" and would destroy it upon Miltner fulfilling certain demands, namely waiving "any inadvertent 'violations' of the Non-Piracy Agreement." Yet Roberts maintained at trial that she did not have the list anymore. Ogburn and Templeton did not believe Roberts.

Ogburn testified that she believed Roberts still had the list for all three years after her departure from Miltner.  Some messages that Roberts exchanged with another former Miltner employee on May 11, 2020, supported that belief.  Roberts stated she was "just on countdown until that non-compete is up! Ha!"  And when talking about the owners of Miltner feeling threatened about Roberts "stealing clients," Roberts stated: "Oh yeah, they definitely feel threatened!  I'm just biding my time. 😊"  Templeton testified that Roberts's ongoing possession of the client list had the potential to "destroy [the] business" and would be "a gold mine" to a competing business like the one Roberts went to.  She explained that Miltner had no way of knowing how much business it would or could lose because of Roberts stealing the client list, but she estimated that "[i]t will be significant": "It could be as much as a million.  It could be as low as a hundred thousand.  We have no idea what damages."  Ogburn said the same.

The only evidence Roberts offered at the trial was an exhibit with excerpts from Templeton's testimony at a temporary-injunction hearing and a screenshot of a text message, which is not relevant to the issues raised here.  Her attorney also cross-examined Miltner's witnesses, which included Templeton, Ogburn, and Roberts herself.

During his cross-examination of Templeton, Roberts's counsel tried to get her to admit that the liquidated-damages provision was a "penalty":

> Q. And you wanted to make sure that there was a penalty to Casey if she violated the agreement; right?  A. No.  It's protection.  Because, Your Honor, when you're $1.5 million in debt, your customer list is the greatest asset that you have, and she violated the contract by taking that list.

When counsel tried the same question again, Miltner's counsel objected on the ground that Roberts's counsel was trying to have Templeton testify to a legal conclusion. The court allowed the question but stated, "I recognize this is not rendering a legal opinion as to whether it is a penalty as discussed in the non-compete cases." After repeating the question, Roberts's counsel confronted Templeton with the following exchange from her testimony at the temporary-injunction hearing:

> Q. Well, as the penalty—you testified the penalty for breaching this agreement was a year's worth of salary in year one. And so you selected that amount because there had to be at least a penalty; right? A. Yes. We took it upon advisement from Insurance Best Practices.

Once more, Miltner's counsel objected on legal-conclusion grounds, and the court agreed that was "a good objection to the extent that's what he's trying to accomplish." On redirect, Templeton explained it would be impossible for Miltner to assess damages based on a breach and the purpose of the liquidated-damages provision was "to deter anyone from taking—leave and going and being competition to us." Ogburn added in her testimony that the non-piracy agreement was intended to "protect the agency."

In its argument to the court at the remand hearing, Miltner argued it was entitled to liquidated damages of $85,203—that sum stemming from percentages of Roberts's annual salary of $37,868 at 100% for the first year ($37,868), 75% for the second year ($28,401), and 50% for the third year ($18,934). Miltner further argued the liquidated-damages provision of the agreement was not invalid as a penalty and liquidated damages were authorized because "the amount of damage is uncertain," "the amount fixed is fair," and "the ongoing and potential future

damages are incalculable." Miltner also requested an award of attorney fees. In response, Roberts argued that Miltner introduced no evidence to show the liquidated damages were reasonable by approximating the actual loss resulting from the particular breach or the difficulty of proof of loss. Alternatively, Roberts argued the liquidated-damages provision amounted to a penalty and was therefore unenforceable. Roberts lastly argued Miltner failed to prove attorney fees at trial.

In its ruling, the district court found the liquidated-damages provision of the agreement did not constitute a penalty and was therefore enforceable. The court observed that "[t]he overriding factor . . . is the immense difficulty in both proving that loss has occurred and in establishing the amount of the loss with any certainty." The court also concluded that the amount of the liquidated damages set out in the agreement was fair. While the court found it undisputed that Roberts was in possession of the client list during the first year after her departure from Miltner, it found "a preponderance of evidence establishes the list was deleted by Roberts on the advice of counsel in late 2019." As a result, the court awarded Miltner liquidated damages equal to 100% of Roberts's annual salary at the time of her departure from Miltner—$37,868. The court also found Miltner was entitled to recover attorney fees and costs and directed counsel to submit a fee affidavit. Miltner's counsel filed that affidavit and itemization, but Roberts appealed and Miltner cross-appealed before an award was entered.

## II. Standard of Review

We review a district court's determination on the enforceability of a liquidated-damages provision in a contract for correction of errors at law. *Rohlin Constr. Co., Inc. v. City of Hinton*, 476 N.W.2d 78, 79 (Iowa 1991). The court's

ultimate decision on damages is also reviewed for errors at law. *See Ravreby v. United Airlines, Inc.*, 293 N.W.2d 260, 262 (Iowa 1980). The court's findings of fact "have the effect of a special verdict," Iowa R. App. P. 6.907, and they "are binding upon the appellate court if supported by substantial evidence," Iowa R. App. P 6.904(3)(a).

### III. Analysis

#### A. Roberts's Appeal

"[P]arties may fix damages by contract when the amount of damages is uncertain and the amount fixed is fair." *Rohlin Constr.*, 476 N.W.2d at 79. The enforceability of a liquidated-damages provision thus turns on whether it is reasonable or unreasonable:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

*Id.* at 80 (quoting Restatement (Second) of Contracts § 356(1) (Am. L. Inst. 1981)). Two factors guide the inquiry of whether an amount of liquidated "damages is so unreasonably large as to be a penalty": (1) "the anticipated or actual loss caused by the breach" and (2) "the difficulty of proof of loss." *Id.* (quoting Restatement (Second) of Contracts § 356 cmt. b).

Roberts claims "the district court should have ruled that the liquidated damages clause in the contract is unenforceable because it constitutes a penalty." According to Roberts, this is because "Miltner introduced no evidence that 100% of [her] salary approximated the actual loss or that it would be difficult to prove that a loss occurred due to breach of the agreement." In making this claim, Roberts's

overarching argument is that Miltner failed to meet its burden to show the liquidated-damages provision is not a penalty.

Roberts cites *Maple v. Wilson* to support her assertion that "[t]he party seeking damages carries the burden of proof." *See* No. 02-2007, 2003 WL 23005277, at *1 (Iowa Ct. App. Dec. 24, 2003) ("As a general rule, the party seeking damages bears the burden of proving them."). That's true as to the general rule applied in that breach-of-contract case—but it involved regular compensatory damages, not liquidated damages.[2] Miltner appears to agree on appeal that it had the burden to prove the liquidated damages were not speculative, but the case it cites also did not involve liquidated damages. *See St. Malachy Roman Cath. Congregation of Genesco v. Ingram*, 841 N.W.2d 338, 352 (Iowa 2013).

Both parties are incorrect on where the burden lies. As our supreme court stated in *Gordon v. Pfab*, "[a] party who contends that a liquidation clause is in reality a penalty has the burden to plead that fact and prove the actual damages in the trial court."[3] 246 N.W.2d 283, 288 (Iowa 1976); *accord Cedar Valley Med.*

---

[2] The cases *Maple* cites to support that proposition also involve regular compensatory damages rather than liquidated damages. *See Data Documents, Inc. v. Pottawattamie Cnty.*, 604 N.W.2d 611, 616–17 (Iowa 2000); *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 641 (Iowa 1996); *Yost v. City of Council Bluffs*, 471 N.W.2d 836, 840–41 (Iowa 1992).

[3] This was not a new statement of law in Iowa. *See Pace v. Zellner*, 186 N.W. 420, 421 (Iowa 1922) (noting stipulated amount of liquidated damages is the measure of recovery unless the circumstances show it was intended as a penalty and "[t]he burden of proof is upon the party claiming that the provision of the contract is a penalty"); *Selby v. Matson*, 114 N.W. 609, 610 (Iowa 1908) ("When the stipulation on its face purports to designate liquidated damages, the burden of proof to show that such was not the design in making it is always on the party so contending."); *De Graff, Vrieling & Co. v. Wickham*, 52 N.W. 503, 504 (Iowa 1892)

*Specialists, PC v. Wright*, No. 18-1900, 2019 WL 5063325, at *6 (Iowa Ct. App. Oct. 9, 2019) (placing burden of proving unenforceability on party claiming amount of liquidated damages was a penalty). In other words, Miltner wasn't required to prove the liquidated damages were reasonable; instead, Roberts was required to prove they were unreasonable. *See Carroll v. Reo, L.L.C.*, No. 15-1487, 2016 WL 4051565, at *3 (Iowa Ct. App. July 27, 2016) (agreeing with district court's placement of the burden for unreasonableness on the party challenging liquidated damages). So the liquidated-damages provision is presumptively valid, and the presumption of validity must be overcome by the party charged with damages. Requiring the party resisting liquidated damages to prove the contractual provision is an unenforceable penalty is consistent with the well-established proposition that "the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."[4] Iowa R. App. 6.904(3)(e).

---

(requiring party challenging liquidated damages to prove they amounted to an impermissible penalty).

[4] It's also consistent with other state courts that have considered the issue. *See, e.g.*, *El Centro Mall, LLC v. Payless ShoeSource, Inc.*, 94 Cal. Rptr. 3d 43, 60 (Cal. Ct. App. 2009) ("[T]he liquidated damages clause was presumptively enforceable and [the defendant] had the burden to demonstrate otherwise."); *Chisholm v. Reitler*, 352 P.2d 794, 796 (Colo. 1960) ("One who asserts that liquidated damages are penal must prove that fact."); *Clampitt v. A.M.R. Corp.*, 706 P.2d 34, 38 (Idaho 1985) (noting party challenging liquidated damages "had the burden of proof at trial to show that these liquidated damages bore no reasonable relation to the actual damages."); *Pav-Saver Corp v. Vasso Corp.*, 493 N.E.2d 423, 427 (Ill. App. Ct. 1986) ("The burden of proving that a liquidated damages clause is void as a penalty rests with the party resisting enforcement."); *Rodriguez v. Learjet, Inc.*, 946 P.2d 1010,1014 (Kan. Ct. App. 1997) ("The burden of proving that a liquidated damages clause is unenforceable rests with the party challenging its enforcement."); *TAL Fin. Corp. v. CSC Consulting, Inc.*, 844 N.E.2d 1085, 1092 (Mass. 2006) ("Under freedom of contract principles, generally, parties are held to the express terms of their contract, and the burden of proof is on the party seeking to invalidate an express term. The burden of proof regarding the enforceability of a liquidated damages clause, therefore, should rest squarely on the party seeking

With the burden correctly in place, there's not much left to Roberts's claim on appeal. Neither party contends the district court misapplied the burden of proof. *Cf. Carroll*, 2016 WL 4051565, at *3. And a misapplication of the burden is not apparent from the court's ruling, which did not expressly place a burden on either party in finding the liquidated damages were fair and not unenforceable as punitive. *See State v. Wheeler*, No. 04-2022, 2006 WL 1409999, at *4 (Iowa Ct. App. May 24, 2006) (requiring application of incorrect standard to be "affirmatively shown" before a remand would be ordered); *see also State v. Barrett*, No. 17-1814, 2018 WL 6132275, at *5 (Iowa Ct. App. Nov. 21, 2018) (noting same and adding

---

to set it aside."); *Shallow Brook Assocs. v. Dube*, 599 A.2d 132, 138 (N.H. 1991) ("As the party alleging that the liquidated damages amount was unreasonable, the plaintiff has the burden of proof."); *MetLife Cap. Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493, 496 (N.J. 1999) ("[L]iquidated damages provisions . . . are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness."); *P.J. Carlin Constr. Co. v. City of New York*, 399 N.Y.S.2d 13, 14 (N.Y. App. Div. 1977) ("Generally, where a contract contains a liquidated damages clause, the party seeking to repudiate that clause must show that the agreed damage is so exorbitant as to be in the nature of a penalty."); *Illingworth v. Bushong*, 688 P.2d 379, 382 (Or. 1984) ("A showing that the liquidated damages are 'grossly disproportionate' to actual damages is evidence that the estimate was not reasonable. The burden of proof, however, is on the party who seeks to avoid the clause." (internal citation omitted)); *Chamberlain Livestock Auction, Inc. v. Penner*, 462 N.W.2d 479, 484 (S.D. 1990) ("The party against whom enforcement is sought has the burden of establishing that a liquidated damage provision is a penalty."); *Fluid Concepts, Inc. v. DA Apartments Ltd. P'ship*, 159 S.W.3d 226, 231 (Tex. App. 2005) ("[T]he party asserting that a liquidated damages clause is, in fact, a penalty provision has the burden of proving this defense." (alteration in original) (citation omitted)); *Wassenaar v. Panos*, 331 N.W.2d 357, 361 (Wis. 1983) ("Because the employer sought to set aside the bargained-for contractual provision stipulating damages, it had the burden of proving facts which would justify the trial court's concluding that the clause should not be enforced. Placing the burden of proof on the challenger is consistent with giving the nonbreaching party the advantage inherent in stipulated damages clauses of eliminating the need to prove damages, and with the general principle that the law assumes that bargains are enforceable and that the party asking the court to intervene to invalidate a bargain should demonstrate the justice of his or her position." (internal citation omitted)).

that a remand is not required "where the record was adequate to review the decision on the merits").

In challenging that finding, Roberts simply complains that Miltner did not meet its burden to prove both factors showing that liquidated damages were not punitive: (1) that the measure of liquidated damages was a reasonable approximation of the actual or anticipated loss and (2) that it would be difficult to prove that a loss occurred. According to Roberts, because Miltner did not meet its burden to show the liquidated-damages provision does not amount to a penalty, then it is a penalty and is therefore unenforceable.

But, as discussed above, the proper inquiry is whether *Roberts* proved her salary did not approximate the actual loss or that it would not be difficult to prove loss and its extent. While Roberts complains Miltner "made no attempt to introduce evidence that it approximated the actual loss the company would suffer" or any "effort to show that it would be difficult to prove that a loss occurred or establish amount of the loss with requisite certainty," neither did Roberts. And it was her burden to do so.

As to approximation, Roberts presented no evidence that the actual damages flowing from the breach would have been less than the stipulated amount of liquidated damages. *See Gordon*, 246 N.W.2d at 288 (finding challengers to liquidated damages failed to meet their burden to show penalty where they offered "no evidence" on "the actual damages"); *see also Clampitt*, 706 P.2d at 38 (noting party challenging liquidated damages "had the burden of proof at trial to show that these liquidated damages bore no reasonable relation to the actual damages"). And she presented no evidence that calculating and proving the loss and its extent

would be doable at all, let alone less than difficult. The only evidence Roberts relies on to support her position is Templeton's testimony at the temporary-injunction hearing, which Roberts claims showed that the liquidated-damages provision is a penalty. But the district court correctly declined to consider that testimony as dispositive on whether the provision was a penalty in the enforceability sense.

In the end, there was little if any evidence presented to rebut the presumption of the validity of the liquidated-damages clause. We accordingly affirm the district court, concluding Roberts failed to meet her burden.

## B. Miltner's Cross-Appeal

On cross-appeal, Miltner argues "the court made errors at law regarding the burden of proving the possession of the client list and substantial evidence does not support the court's findings relating to the credibility of [Roberts's] testimony." Based on these alleged errors, Miltner submits it should have been awarded additional liquidated damages for Roberts's possession of the client list in years two and three following the termination of her employment.

### 1. Burden of proof for affirmative defenses

For the first part of its argument—that the court erred in relation to the burden of proof—Miltner argues that Roberts's claim that she deleted the client list "is basically establishing an affirmative defense[] of substantial performance or accord and satisfaction." While Miltner acknowledges Roberts did not plead these affirmative defenses, it submits she raised them at trial and the burden of proving them as affirmative defenses was on her. According to Miltner, because Roberts's deletion of the list was an affirmative defense, Miltner was not required to prove

she didn't delete it to recover for years two and three. So Miltner argues the court "erroneously placed the burden of proving that the customer list pirated by [Roberts] was not destroyed, or was destroyed but saved elsewhere, was on Miltner."

While Roberts does not contest error preservation on Miltner's claim, we can raise the issue on our own motion. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). Miltner did not raise this claim on affirmative defenses at trial or the remand hearing and, even if it had, the district court did not rule on any such claim. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We accordingly find error was not preserved on this claim and do not address it further.

### 2. Credibility

Next, Miltner argues "[a] reasonable mind could not reach the conclusion that [Roberts's] testimony regarding her destruction or relinquishment of the client list, without further evidence, is credible." Miltner first points to Roberts's motives for deceit—being in direct competition with Miltner and the potential benefit from retaining the list. Miltner also points to other circumstances that make Roberts's claim that she deleted the list questionable, like contradictions in her testimony about when the list was deleted and the May 2020 messages that she exchanged with another former employee about biding her time.

The district court, however, found "Roberts to be credible and truthful."[5] The court continued:

> Her ready admission she emailed the list to herself enhanced her credibility. This Court finds her testimony she deleted the list on the advice of counsel after the initial contact from Miltner's attorneys to be credible. While the electronic list could theoretically exist indefinitely, as urged by Miltner, a preponderance of evidence establishes the list was deleted by Roberts on the advice of counsel in late 2019. There is no evidence, by admission or otherwise, she possessed the list thereafter.

These "findings of fact, viewed in the light most favorable to the trial court's judgment, have the force of a special verdict and are binding on us if supported by substantial evidence." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). "Evidence is substantial when a reasonable mind would accept it as adequate to support a conclusion." *Ravreby*, 293 N.W.2d at 79. "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Brokaw*, 788 N.W.2d at 393. And, notably, "[t]he district court, as the fact finder, determines witness credibility and the weight of the evidence as a whole." *Id.* at 395.

Giving deference to the court's credibility determination, we conclude the evidence presented supports its conclusion that Roberts did not possess the list after the first year following her termination. So we affirm the court's liquidated-damages award on Miltner's cross-appeal.

---

[5] The judge who issued the remand ruling on damages was the same judge who heard the trial in May 2021.

### C.    Attorney Fees

This leaves us with Miltner's request for $6975 in appellate attorney fees, which Roberts asks to be remanded to the district court.  While the non-piracy agreement burdens Roberts with responsibility for *all* of Miltner's attorney fees in the event of a suit, awards of attorney fees under a contract are statutorily limited to what is reasonable.  *See* Iowa Code § 625.22(1) (2020); *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 470 (Iowa 2010); *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007).  The party seeking an award must "prove both that the services were reasonably necessary and that the charges were reasonable in amount."  *Ales*, 728 N.W.2d at 842 (quoting *Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990)).  The factors below should be considered in determining what is reasonable:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.

*Id.* (citation omitted).  In the end, "[t]he district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case."  *Id.* (citation omitted).

Considering that the district court has not yet entered a final award on Miltner's initial request for trial attorney fees, we agree with Roberts that the issue of appellate attorney fees should be remanded for the district court to consider with its decision on trial attorney fees.  This will allow the court the opportunity to "look at the whole picture" and "decide on a total fee appropriate for handling the complete case."  *Id.* (citation omitted)*; accord Bankers Tr. Co. v. Woltz*, 326

N.W.2d 274, 278 (Iowa 1982) ("We prefer that the district court determine the reasonable amount of attorney fees [that] should be awarded on this appeal."). We accordingly remand the matter "to the district court for the limited purpose of an evidentiary hearing on and fixing of [trial and] appellate attorney fees." *Bankers Tr.*, 326 N.W.2d at 278.

## IV. Conclusion

We affirm the district court on Roberts's appeal, concluding that Roberts did not meet her burden to prove the liquidated-damages clause constituted a penalty and was therefore unenforceable. On Miltner's cross-appeal, we find the affirmative-defense and burden-shifting argument was not preserved and substantial evidence supports the court's conclusion on the amount of damages. We affirm and remand the issue of appellate attorney fees to the district court, to be considered with its determination of trial attorney fees.

**AFFIRMED ON APPEAL; AFFIRMED AND REMANDED WITH DIRECTIONS ON CROSS-APPEAL.**